UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

U.S. BANCORP OLIVER-ALLEN
TECHNOLOGY LEASING,

       Plaintiff,

 -against-

HALL, DICKLER, KENT, GOLDSTEIN &
WOOD, LLP,

       Defendant.

------------------------------------------------------------x

04 Civ. 4986

**OPINION AND ORDER**

Ronald S. Beacher, Pitney Hardin LLP, New York,
New York <u>for plaintiff</u>.

Leslie D. Corwin, Elizabeth Prickett-Morgan,
Greenberg Traurig, LLP, New York, New York <u>for
defendant</u>.

GERARD E. LYNCH, <u>District Judge</u>:

  Plaintiff U.S. Bancorp Oliver-Allen Technology Leasing ("USB") sues defendant Hall, Dickler, Kent, Goldstein & Wood, LLP ("Hall Dickler") for breach of contract and conversion in connection with an agreement ("Master Lease") entered into by the parties for the lease by plaintiff to defendant of certain equipment ("Equipment"). Plaintiff initially moved for partial summary judgment as to its first breach of contract claim. Prior to that motion's adjudication, plaintiff moved for summary judgment as to both its first and second breach of contract claims, noting that because damages for its third claim, conversion, are subsumed within the damages sought for its breach of contract claim, its present motion is potentially dispositive.[1] In opposing

---

[1] Plaintiff's Complaint presses a total of *four* causes of action (two for breach of contract, one for conversion, and one for replevin) but the Court understands plaintiff's statements about

summary judgment, Hall Dickler concedes liability for breach of the Master Lease. (D. PMSJ Opp. Mem. 2.) The only issue in dispute, accordingly, is whether there are genuine issues of material fact as to the amount owed as a consequence of that breach such that summary judgment is precluded and the case must proceed to trial on the issue of damages. As to that issue, plaintiff's motion for summary judgment will be denied.

## BACKGROUND

It is undisputed that the Master Lease entitles USB to recovery of certain sums from Hall Dickler for the latter's default on payments due under the agreement. Specifically, section 13 of the Master Lease provides that in the declared "Event of Default," as occurred here:

> Lessee shall, without further demand, immediately pay Lessor an amount equal to all accrued and unpaid Rent for each item of Equipment then leased by Lessee under each and every Lease plus as liquidated damages and not as a penalty, an amount equal to the aggregate of Rent Payments remaining under all Leases, discounted at the rate of 6.0% (six percent) per annum, plus all costs of enforcement and collection, including reasonable attorneys fees and expenses (the "Default Payment"). Interest shall accrue on the Default Payment from the date due until the date paid at the rate of 18% per annum or the maximum rate permitted by law, whichever is less.

USB calculates the amount Hall Dickler owed in accrued and unpaid rent, inclusive of sales tax, as $81,545.14, and the aggregate of rent payments remaining under the Master Lease discounted at the rate of 6% per annum, inclusive of sales tax, as $547,289.45.

The Master Lease also provides USB with the option of taking possession of the Equipment (and permits it to require Hall Dickler to return the Equipment), but doing so

---

the potential dispositive nature of its summary judgment motions as an abandonment of the fourth claim for relief (replevin).

obligates it to undertake "commercially reasonable efforts" to mitigate its damages. The Master Lease specifies that the standard of "commercially reasonable efforts" is satisfied by sale of the Equipment in a manner prescribed by the Master Lease and application of the sale proceeds (following deductions for recovery, repair, storage, leasing, and sale of the Equipment) toward the payment of the Default Payment, with Hall Dickler liable for the balance. (Master Lease § 13.)

USB did opt to take possession of the equipment and to resell it to offset Hall Dickler's liability. Hall Dickler indicated its intent to return the Equipment—apart from certain items in their former White Plains office ("Excluded White Plains Equipment") which were to be sold in place to a new law firm taking over the office space—in a conversation with USB on March 31, 2004, and this intention was then memorialized in an April 5, 2004, email from Hall Dickler's director of information technology, Michael Oberempt, to Maria Stainbrook, a portfolio collection specialist at USB. In that same email, Oberempt requested instructions for returning the equipment, and those instructions were eventually provided by USB on April 14, 2004. As instructed, Hall Dickler returned some of the Equipment to Computer Clearing House ("CCH") in Rochester, New York and the balance to a company named CWI in Hackettstown, New Jersey. Equipment returned to CWI and CCH was sold for what USB claims was a total of $102,303.75, although a de minimus amount of Equipment (the value of which USB estimates at $2,000) remains to be sold.

USB claims, and Hall Dickler does not dispute, that some Equipment ("Missing Equipment") was never returned and that some Equipment was damaged. USB calculates the value of the "Missing Equipment" as $18,797.52, and damages to the Equipment as $3,975.

Finally, USB also seeks $337.49 in additional property taxes charged on the Equipment.

Against these damages, USB has credited Hall Dickler $350 for additional Equipment Hall Dickler claims was returned, as well as $37,639.03, the amount of security deposits paid by Hall Dickler. Interest and attorneys' fees continue to accrue, but, on this motion and as of the date of its reply papers, June 24, 2005, USB calculates the total damages owed as $648,780.65:

| | |
|---|---:|
| Accrued and Unpaid Rent (inclusive of sales tax) | $ 81,545.14 |
| Aggregate of Rent Payments Remaining under the Lease discounted at the rate of 6% per annum (inclusive of sales tax) | 547,289.95 |
| Attorneys' fees and costs | 45,105.77 |
| Missing Equipment | 18,797.52 |
| Damaged Equipment | 3,975.00 |
| Property Taxes | 337.49 |
| Interest at 18% | 124,210.30 |
| Proceeds of sale of Equipment | (132,491.49) |
| Credit for additional equipment returned | (350.00) |
| Credit for security deposits | (37,639.03) |
| Estimated additional proceeds of sale of de minimus Equipment | (2,000.00) |
| Total | $648,780.65 |

(P. R. 56.1 Stmt. ¶ 23; P. SJ Reply Mem. 10.) Of all of these itemized damages, Hall Dickler claims a disputed issue of material fact as to only three: attorneys' fees, the proceeds of the sale of the returned Equipment, and the value of the Missing Equipment.[2]

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Certain of these amounts—property taxes and security deposit credits—appear for the first time in USB's reply papers on this motion. Hall Dickler, however, has not sought to file a sur-reply to contest these amounts, and, accordingly, the Court does not understand them to be disputed.

4

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In turn, a "genuine issue as to any material fact" is established "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (internal citations omitted); see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). To defeat summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[C]onclusory allegations or unsubstantiated speculation" will not suffice. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Damage amounts often present factual issues which must be resolved at trial. Here, however, USB has provided sufficient, admissible evidence to support its detailed accounting of the amounts due as a result of Hall Dickler's admitted breach of contract. Hall Dickler only purports to raise an issue of fact as to three items in this accounting; the rest must therefore be accepted as undisputed. Even as to the purportedly disputed items, moreover, and in spite of the protestations in its opposition papers, Hall Dickler has done little more than conclusorily assert that the amounts are in dispute. This does not go far enough to prevent summary judgment as to two of the "disputed" items.

First, as to the amount of attorneys' fees, the contract explicitly entitles USB to the recovery of "reasonable attorneys fees and expenses." The Court does not understand Hall Dickler to challenge the validity of that provision. Hall Dickler seeks instead to prevent summary judgment by claiming a disputed issue of material fact as to the amount of attorneys' fees, in that it claims USB has presented no documentary evidence of the basis for its attorneys' fees and further that Hall Dickler "as yet [has] had no discovery into [USB's] attorneys' fees and is certainly under no legal obligation to accept the amount of those fees without dispute." (D. SJ Opp. Mem. 3.)

But a dispute over the *amount* of attorneys' fees does not prevent summary judgment: "When a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993). Here, there is no dispute about whether attorneys' fees are to be awarded, and consequently no disputed issue which must proceed to trial. "[T]he amount of attorneys' fees, even when awarded under a contract, is a post-judgment matter collateral to a decision on the merits," id. at 1315, citing Budinich v. Becton Dickinson and Co., 486 U.S. 196, 202–03 (1988). Hall Dickler thus cannot prevent summary judgment merely by disputing the amount of attorneys' fees it owes USB under the Master Lease.

In its reply papers, USB has submitted an affidavit from counsel, attaching redacted copies of invoices for fees and costs incurred in prosecuting this action, and covering the period March 5, 2004 to May 26, 2005. (Beacher Aff. ¶ 3 & Ex. 1.) This evidence—a detailed accounting of what and when services were provided—is sufficient to establish the

6

reasonableness of the attorney fees sought by USB, subject to a final calculation and presentation at the conclusion of this litigation, and Hall Dickler has not sought to file a sur-reply to challenge the reasonableness of these fees. Moreover, a substantial period of discovery of several months in duration preceded this motion. Contrary to its assertion, Hall Dickler had ample opportunity to conduct discovery into the reasonableness of USB's attorneys' fees by requesting invoices, deposing counsel, or by any other means of its choosing. On this record, the Court is satisfied that the attorneys' fees sought by USB are reasonable. As stated below, however, genuine issues of material fact exist as to damages sought by USB in connection with the Missing Equipment, preventing summary judgment as to damages at this time. Consequently, the Court defers determining the amount of attorneys' fees to be awarded until the entry of final judgment in this matter.

Second, Hall Dickler claims that USB has failed to adequately support its assertion that the sale of the returned Equipment netted $132,491.49 and that the sale was conducted in the "commercially reasonable fashion" required by the Master Lease. (D. SJ Opp. Mem. 3–4.) But in support of its motion, USB submitted an affidavit from the individual responsible for the sale of the returned Equipment, who avers that "CCH and CWI sold substantially all of the portions of the Equipment that were delivered to them. I am informed and believed that the Equipment was sold to third parties and the sales were all arms length. [USB] received the total sum of $102,303.75 from the proceeds of the sales of the Equipment by CCH and CWI. CCH is still attempting to sell certain deminimus [*sic*] Equipment. I anticipate receiving an additional sum of no more than $2,000 from the sale of the remaining Equipment held by CCH." (Beal Aff. ¶ 14). Against this testimony, Hall Dickler argues only that a fact finder would require more at trial to

establish the actual amounts received, and that it "is entitled to test and examine the credibility and reliability of any such evidence at trial and to present any contrary evidence it may have, again at trial." (D. SJ Opp. Mem. 4–5.)

This wholly misunderstands the standards of summary judgment: USB *has* provided evidence of the sale proceeds in the form of Beal's sworn testimony, and Hall Dickler has not challenged the credibility of this testimony, apart from conclusory allegations in its legal briefing, nor come forward with independent facts, such as a competing valuation of what the returned Equipment should have fetched at resale, to put this amount into dispute. This will not suffice to create a genuine issue of material fact on summary judgment. "[A] party [opposing summary judgment] may not rest upon unsupported allegations or denials, or simply claim without support that evidence adduced by the movant in support of the motion is not credible." Peterson v. Cont'l Casualty Co., 116 F. Supp. 2d 532, 540 (S.D.N.Y. 2000). Indeed, the very purpose of summary judgment—preserving resources for the adjudication of actual disputes—would be defeated if the non-movant, failing to meet its burden at the summary judgment stage, were given yet another opportunity to uncover and present facts at trial. Hall Dickler cannot wait for trial "to present any contrary evidence it *may* have." As the Second Circuit put it in Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), "[w]hen the [summary judgment] motion is made, . . . [t]he time has come 'to put up or shut up.'" Hall Dickler has egregiously failed to "put up" any reason to discredit USB's evidence with respect to the sales proceeds.

Nor does a genuine issue of material fact exist as to whether USB complied with its obligation under the Master Lease to mitigate its damages in a "commercially reasonable fashion." The Master Lease specifically provides that this standard is satisfied by sale of

8

returned Equipment as prescribed within the lease itself, and application of the sale proceeds to any amounts owed, which is precisely what USB has done in the instant case. Hall Dickler insists that USB has "presented no documentary evidence that the manner of the resale was commercially reasonable" (D. SJ Opp. Mem. 4), but does not point to any concrete evidence or even argumentation as to how the resale, as documented and described in Beal's two affidavits in support of USB's motion (Beal Aff. ¶ 14, Beal Second Aff. ¶¶ 8–9), failed to comply with the requirements of the Master Lease.

Hall Dickler does submit a declaration from its counsel, Elizabeth Prickett-Morgan, stating that "the delay created by [USB] in the return of computer equipment . . . could have occasioned a loss of value in that equipment [on resale]." (Prickett-Morgan Decl. ¶ 2.) The delay to which Prickett-Morgan refers is the two week gap between the date on which Oberempt indicated Hall Dickler's intent to return the Equipment (March 31, 2004) and the date on which return instructions were provided by USB (April 14, 2004). (Id. ¶ 3.) This declaration, and the argument it contains, is nowhere referenced in Hall Dickler's legal memorandum. In any event, the attempt to confuse the issue fails spectacularly.

As USB points out, even assuming there was a delay of fifteen days, fully attributable to its actions (rather than the shorter delay it concedes between Oberempt's April 5, 2004, email request for instructions and the April 14, 2004, email providing those instructions), Hall Dickler has failed to demonstrate the materiality of this delay to the value of the returned Equipment. Prickett-Morgan's declaration that the delay "could have occasioned a loss of value" amounts to nothing more than counsel's speculation as to causation, utterly insufficient to create a genuine issue of material fact. The only actual evidence in the record on this point, Beal's reply affidavit,

is undisputed: The value of the Equipment at resale would not have been any higher had the Equipment been returned 15 days earlier. (Second Beal Aff. ¶ 6.) In his deposition testimony, Oberempt disclaimed any knowledge of how the value might have been affected by the more limited one week delay USB acknowledges: Q: "Did the value of any of the equipment decrease as a result of that one-week delay?" A: "I wouldn't know." (Oberempt Dep., Peterson Aff. Ex. 7, at 73.) Although Oberempt was not specifically asked about a fifteen-day delay, given his acknowledgment that he was not "an expert on the value of equipment and depreciation" (id.), it is exceedingly clear that Hall Dickler has not uncovered or supplied any evidence casting Beal's assessment into dispute. Accordingly, even if the length of a delay is disputed between the parties, and accepting for the sake of the motion Hall Dickler's position on this issue, Hall Dickler has presented no evidence that this delay had any bearing on the value of the returned Equipment, and thus, it does not serve to create a genuine issue of material fact.

It is clear that a genuine issue of material fact does exist, however, as to the value of the Missing Equipment. Oberempt has estimated the value of the Missing Equipment at $12,082.02. Although USB initially valued the Missing Equipment at $30,445.95, after receiving Oberempt's estimation, it revised its estimate to $18,797.52. (Beal Aff. ¶¶ 11–13 & Ex. 3.) Hall Dickler has done no more on summary judgment than stand on the valuation provided by Oberempt (and documented in Beal's affidavit, not in any independent submission by defendant), but it is nonetheless self-evident that there is a difference of $6,715.50 between the two figures before the Court. It is worth repeating Oberempt's deposition testimony that "I don't think I'm an expert on the value of equipment and depreciation," while USB's estimate is provided by its "Off-Lease Equipment Specialist," who avers that he is "in charge of the return and sale of certain computer

10

equipment which was previously leased by [USB and has] been in this position for six (6) years. I have been involved in the resale of computer equipment for thirteen (13) years. I have extensive knowledge regarding the resale of equipment." (Second Beal Aff. ¶ 2.) Ultimately, however, it is not the Court's function on summary judgment to make credibility determinations. Faced with two competing valuations, the Court is constrained to find that this issue—representing less than 1% of the overall amount to which USB is indisputably entitled—creates a genuine issue of material fact for trial.

## CONCLUSION

Accordingly, USB's motion for summary judgment is granted on consent as to Hall Dickler's liability for the first and second causes of action. USB's motion for summary judgment as to damages resulting from these breaches is denied, but only because the parties differ by $6,715.50 as to the value of the Missing Equipment, and, accordingly a genuine issue of material fact exists as to that item preventing a final judgment for plaintiff. As to all other damage items, USB is indisputably entitled to amounts consistent with its calculations as set forth above, subject to revision only with regard to the attorneys' fees and interest which continue to accrue.

It is notable that between the filing of this motion and the submission of reply papers, plaintiff's attorneys' fees, which defendant will have to pay, increased by $1,960.70 (P. SJ Reply Mem. 10), almost one-third of the amount as to which there is any genuine dispute in this case. Further litigation is likely to cost defendant more money than can possibly be gained by a favorable verdict on the sole disputed issue, and in light of the minimal value to either party of a favorable resolution of the disputed value of the Missing Equipment, the parties are strongly encouraged to consider settlement.

SO ORDERED.

Dated: New York, New York
      July 27, 2005

                                          GERARD E. LYNCH
                                        United States District Judge